# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**SANDRA KELLEY, Personal Representative of the Estate of LARRY McKINNEY; SANDRA KELLEY; CHANCE McKINNEY; STORMY McKINNEY; and STEVIE McKINNEY,**

                Plaintiffs,

    v.

**MICHAEL MORTON and THE CITY OF FAIRVIEW, by and through the Fairview Police Department,**

                Defendants.

Case No. 3:12-cv-01647-ST

**FINDINGS AND RECOMMENDATION**

**STEWART, Magistrate Judge:**

## INTRODUCTION

This case involves the fatal shooting of Larry McKinney ("McKinney") on January 27, 2012, during an encounter between McKinney and two police officers for the City of Fairview, Michael Morton ("Morton") and Joe Kaiser ("Kaiser"). McKinney's mother, Sandra Kelley ("Kelley"), filed this action on September 12, 2012, as the Personal Representative of McKinney's estate, as well as on her own behalf and on behalf of McKinney's minor children,

Chance, Stormy, and Stevie McKinney.[1]  Although initially named as a defendant, Kaiser was dismissed with prejudice on August 29, 2014 (docket #23).  The remaining defendants are the City of Fairview and Morton.

The Complaint alleges the following claims under 42 USC § 1983 against Morton: (1) arrest without probable cause in violation of the Fourth and Fourteenth Amendments (First Claim); (2) unreasonable use of deadly force in violation of the Fourth and Fourteenth Amendments (Second Claim); (3) deprivation of  Kelley's substantive due process rights in violation of the Fourteenth Amendment (Third Claim); and (4) deprivation of the substantive due process rights (loss of a parent) of McKinney's minor children in violation of the Fourteenth Amendment (Fourth Claim).  It also alleges a § 1983 claim against the City of Fairview based on an unconstitutional custom, policy or procedure by the City of Fairview (Fifth Claim) and supplemental state claims against both Morton and the City of Fairview for battery (Sixth Claim) and wrongful death (Seventh Claim).

Defendants have filed a Motion for Partial Summary Judgment (docket #34), seeking summary judgment against plaintiffs' request for punitive damages, as well as against each of plaintiffs' claims with the exception of the portion of the Second Claim premised upon the Fourth Amendment and the Sixth and Seventh Claims insofar as they are alleged against the City of Fairview.  In response to the motion, plaintiffs have withdrawn the Fifth Claim (docket #46, p. 2).   For the following reasons, defendants' motion should be granted in part and denied in part.[2]

---

[1] On March 31, 2014, this court granted Kelley's Petition to be appointed as the Guardian *ad litum* for McKinney's minor children (docket #38).  This moots defendants' argument that the minor plaintiffs' claims fail because they are not the real parties in interest.

[2]  Although the parties filed their submissions under seal, citing the Stipulated Protective Order (docket #12), this Findings and Recommendation does not disclose any confidential or privileged information and need not be sealed.

## STANDARDS

Summary judgment may be granted if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only determine[] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989) (citation omitted). The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn from the facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations omitted).

## FINDINGS

### I. Undisputed Material Facts

Many of the events leading up to the encounter between McKinney and the two police officers are undisputed. Officers Morton and Kaiser responded to a call of a domestic disturbance involving a "drunk son" who had kicked in a door. Kaiser Depo., pp. 45, 52, 61; Morton Depo., pp. 55, 59. Neither officer had any prior contact with McKinney or Kelley. Kaiser Depo., p. 48; Morton Depo., p. 51. Within a minute or two of arriving on the scene,

Morton shot McKinney who, carrying a knife, had come out of Kelley's apartment onto a second-story landing above a flight of stairs.  Burrows Decl., Ex. 1.

Upon arriving on the scene, Morton and Kaiser made contact with Kelley, who, in response to Kaiser's question, told them there were no weapons in the apartment.  Kelley Depo., p. 183; Kaiser Depo., pp. 59-61; Morton Depo., pp. 60-61, 66-67.  Kelley contends that, because the officers already "had their guns out," she told not to "shoot him," but instead just "make him leave."  *Id* at 183-84.  She then saw McKinney come out of the apartment with a kitchen knife and told him to "put the knife down."  Kelley Depo., p. 186.  Next, in "very fast succession," the officers yelled at McKinney to "[d]rop the weapon, drop the weapon," and Morton fired shots at McKinney, fatally wounding him.  Kelley Depo., pp. 186-87.

As discussed in more detail below, two critical facts are disputed.  First, it is disputed if or how far the officers had ascended the stairs at the time of the shooting.  Kelley testified that the officers did not ascend the stairwell, while the officers testified that Kaiser ascended to one step below the landing, then retreated back down the stairs past Morton, and that Morton was about halfway up the staircase.  Kaiser Depo., pp. 64-83; Kelley Depo., p. 185 & Kelley Depo. Ex. 15; Kelley Grand Jury Testimony, pp. 36-37; Morton Depo., pp. 67-78; Kaiser Grand Jury Testimony, p. 87.  Second, it is disputed whether McKinney, who never left the top of the staircase, was "charging" or "lunging" toward the officers with the knife.  Kaiser Depo., p. 79; Kelley Depo., p. 192; Morton Depo., p. 78; Burrows Decl., Ex. 15.

No further recitation of the facts is necessary to decide the bulk of defendants' motions.  Accordingly, the necessary factual information is discussed only as necessary in the context of each individual motion.

## II.  First and Second Claims (Fourth and Fourteenth Amendments)

The First Claim alleges that Morton arrested McKinney without probable cause in violation of the Fourth and Fourteenth Amendments, while the Second Claim alleges an unreasonable use of deadly force in violation of the Fourth and Fourteenth Amendments.

Morton seeks summary judgment against the First Claim because there is no evidence that McKinney was "arrested" prior to being shot.  Instead, he contends that plaintiffs may only pursue a claim against him for using excessive force as alleged in the Second Claim.  Citing *Heck v. Humphrey*, 512 US 477 (1994) and its progeny,[3] plaintiffs argue that the First and Second Claims allege two separate constitutional wrongs and are not mutually exclusive. However, *Heck* does not address the issue of whether a police confrontation that, within moments, results in a shooting death provides a basis for both an unconstitutional arrest claim and an unconstitutional seizure claim.  Instead, that line of cases addresses whether success on the subsequent § 1983 claim for arrest without probable cause or for excessive force in affecting a seizure might imply the validity of a criminal conviction that resulted from the same encounter.

The First Claim alleging an arrest without probable cause fails for the simple reason that McKinney was never "arrested."  In the brief moments between the time the officers made contact with McKinney's mother and the firing of the fatal shots, the only interaction between the officers and McKinney was after McKinney came out of his mother's apartment onto the landing.  The officers yelled at him to drop the weapon, and then Morton fired his gun at McKinney, fatally wounding him.  McKinney's act of exiting an apartment carrying a kitchen knife violated no law, and the only statements uttered before the fatal shots (first by his mother,

---

[3] Plaintiffs also cite *Smith v. City of Hemet*, 394 F3d 689 (9th Cir 2005), and *Guerrero v. Gates*, 442 F3d 697 (9th Cir 2003), two Ninth Circuit cases interpreting *Heck*.  In *Smith,* the officers allegedly used excessive force when they pepper sprayed the plaintiff and released a police dog on him while arresting him.  In *Guerrero*, the officers allegedly punched, choked, and kicked the plaintiff while placing him under arrest on trumped-up narcotics charges.

then by the officers, telling him to put the knife down) indicates that the officers were acting to

diffuse what they perceived to be an escalating situation, not that they intended to arrest him.

Morton acknowledges that McKinney was "seized" for constitutional purposes at the time he

used force against him and that an excessive use of force in affecting that seizure violates the

Fourth Amendment, as alleged in the Second Claim.  However, no reading of the record

establishes a basis for a claim that Morton "arrested" McKinney by using force.  Therefore, the

First Claim fails.

The Second Claim alleges that Morton used excessive force in violation of both the

Fourth and Fourteenth Amendments.  With regard to the constitutional standard under which the

Second Claim must be analyzed, the Supreme Court could not be more clear:

> Today we make explicit . . . that *all* claims that law enforcement
> officers have used excessive force – deadly or not – in the course
> of an arrest, investigatory stop, or other "seizure" of a free citizen
> should be analyzed under the Fourth Amendment and its
> "reasonableness" standard, rather than under a "substantive due
> process" approach.

*Graham v. Connor*, 490 US 386, 395 (1989); *see Ward v. City of San Jose*, 967 F2d 280, 285 (9th

Cir 1991) ("It is reversible error to give a substantive due process instruction in an excessive

force case after *Graham*.").

Accordingly, Morton should be granted summary judgment against the First Claim in its

entirety and also against the Second Claim to the extent it alleges a violation of the Fourteenth

Amendment.

## III. **Third and Fourth Claims (Substantive Due Process)**

Morton next contends that the Third and Fourth Claims, alleging violations of Kelley's

and her grandchildren's substantive due process rights (familial loss claims), fail as a matter of

law.[4]  The Ninth Circuit recognizes "that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F3d 546, 554 (9th Cir 2010) (citation omitted).  These substantive due process claims require a showing that Morton's use of force "shocked the conscience." *Porter v. Osborn*, 546 F3d 1131, 1137 (9th Cir 2008).  When an officer does "not have time to deliberate, a use of force shocks the conscience only if the officers had a 'purpose to harm' the decedent for reasons unrelated to legitimate law force objectives." *Gonzalez v. City of Anaheim*, 747 F3d 789, 798 (9th Cir 2014), citing *Porter*, 546 F3d at 1137, *petition for cert. filed*, No. 13A781, 14-108 (July 30, 2014).  "Whether a claim should be analyzed under the deliberate indifference standard or purpose to harm standard depends upon the degree to which, under the circumstances, actual deliberation is practical." *Wilkinson*, 610 F3d at 554.

Morton insists that he was forced to make a split-second decision and acted strictly to protect Kaiser from an immediate threat by McKinney.  In his view, he had no opportunity to deliberate in such exigent circumstances.  *See County of Sacramento v. Lewis*, 523 US 833 (1998) (high speed car chase); *Whitley v. Albers*, 475 US 312 (1986) (prison riot); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F3d 365 (9th Cir 1998) (gun fight in a crowded parking lot).  On the other hand, it is undisputed that McKinney did not leave the landing at the top of the stairs, and Kelley testified that the officers never went up the staircase, but instead were at the bottom of the staircase when Morton shot McKinney.  Kelley Depo., p. 185; Kelley Grand Jury Testimony, pp. 36-37.

---

[4]  Although not raised by Morton in the present motion, there is some question whether McKinney's mother, Kelley, has a viable claim for loss of companionship.  *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F3d 1159, 1169 n3 (9th Cir 2013) (citations omitted) (noting that several circuits "have held that a parent's protected interest in the companionship of his or her child, at least as far as the Constitution is concerned, ends when the child reaches the age of majority," but declining to decide the issue as it was not properly part of the appeal).

If Morton had no time to deliberate, then the heightened "purpose to harm" standard applies, requiring plaintiffs to prove that Morton shot McKinney for reasons unrelated to legitimate law enforcement objectives.  For example, a "purpose to harm" may be proven by evidence of "bully[ing] a suspect or get[ting] even."  *Wilkinson*, 610 F3d at 554 (internal quotation marks omitted).  The record is devoid of such evidence.  It is undisputed that neither Morton nor Kaiser had any prior contact with McKinney or any ulterior motive to intentionally harm him.  Instead plaintiffs merely speculate as to Morton's subjective state of mind.  Assuming the "purpose to harm" standard applies, speculation about an officer's motives will not suffice to survive summary judgment.  *Gonzalez*, 747 F3d at 798, citing *Karam v. City of Burbank*, 352 F3d 1188, 1194 (9th Cir 2003).

However, this court must view the record in the light most favorable to the non-moving party.  Bound by that command, and assuming Kelley's testimony as true (that McKinney did not charge or lunge at the officers and that the officers were at the bottom of the staircase), a jury could reasonably conclude that deliberation by Morton was eminently practical in this situation.  If Morton had an opportunity to deliberate before shooting, then plaintiffs need only prove that Morton was "deliberately indifferent."

It is disputed whether Morton or Kaiser were ever in mortal danger requiring a split-second decision to shoot.  The only weapon mentioned was the knife McKinney held in his hand at the top of a 14-step stairwell, approximately 25 feet in length (Morton Depo., p. 70), between him and the officers who had guns.  As discussed above, it is disputed whether McKinney "charged" or "lunged" at the officers with the knife and how far away the officers were from McKinney immediately prior to the shooting.  This was not a situation which "evolved from a car chase to a situation involving an accelerating vehicle in dangerously close proximity to offers

on foot" as in *Wilkinson* or a situation with the victim raising a large knife and taking one or two steps toward the officer only eight feet away as in *Hayes v. Cnty. of San* Diego, 736 F3d 1223 (9th Cir 1993). Instead, if the jury believes the evidence submitted by plaintiffs, it could reasonably find that Morton had time to deliberate and take some action other than just telling McKinney to drop the weapon and then immediately firing. Accordingly, Morton should be denied summary judgment against the Third and Fourth Claims alleging a substantive due process violation.

## IV.  Punitive Damages

Plaintiffs seek punitive damages against Morton in an amount to be proven at trial. Complaint, ¶ 68(3). Morton argues that he is entitled to summary judgment against punitive damages based on the lack of any evidence that he was motivated by evil motive or intent, or exhibited reckless or callous indifference to McKinney's constitutional rights.

Punitive damages are proper in § 1983 cases when the defendant not only has acted with evil motive or intent or with reckless or callous indifference, but also has acted in an oppressive manner. *Dang v. Cross*, 422 F3d 800, 806-11 (9th Cir 2005). The standard for imposing § 1983 liability "largely overlaps" the standard for imposing punitive damages. *Larez v. City of Los Angeles*, 946 F2d 630, 649 (9th Cir 1991). However, punitive damages depend on the jury's judgment that the defendant's conduct justifies a particular punitive award.

"The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases. As the cases cited by the [Supreme] Court in *Smith* made clear, malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above that provided by compensatory awards.'" *Dang*, 422 F3d at 807, quoting *Smith*

*v. Wade*, 461 US 30, 54 (1983).   The use of excessive force may support an award of punitive damages based on oppressive conduct:

> The jury reasonably could have concluded that Cross's use of force in the course of Dang's arrest took advantage of Cross's authority and power and Dang's relative weakness.  Indeed, the record reflects that Dang was positioned close to the floor when the struggle ensued because he was ordered to open the safe and that he was injured during the course of the struggle with the three officers.  We therefore conclude that there was a sufficient evidentiary foundation for the oppressive conduct instruction.

*Id* at 811.

Here the material facts reveal a dispute over the exigency of the situation the officers faced and the justification for Morton's shooting of McKinney, given the information the officers had at the time and the relative (and disputed) location of McKinney and the officers on the stairwell.  Not only could a jury conclude that Morton used unreasonable force in reckless disregard of McKinney's rights, but alternatively could find that conduct to be oppressive. As permitted in *Dang*, a jury could reasonably conclude that Morton took advantage of his authority and power standing at the bottom of the stairs with a gun and McKinney's relative weakness standing at the top of the stairs with a knife.  At this juncture, the propriety of an award of punitive damages should be left to the jury's determination.

## V.  <u>Sixth and Seventh Claims (Supplemental State Claims)</u>

Morton also seeks summary judgment with respect to the Sixth and Seventh Claims for battery and wrongful death.  Plaintiffs allege that Morton is sued in his individual capacity, was employed by the City of Fairview Police Department, and was "acting under the color of law." Complaint, ¶ 8.  Thus, defendants contend that under Oregon Tort Claims Act, ORS 30.265(1), the only proper defendant to these tort claims is the public body (City of Fairview) that employed Morton.

However, the current version of the Oregon Tort Claims Act effective on January 1, 2012, provides that a tort action "may be brought and maintained against an officer . . . whether or not the public body is also named as a defendant" if an action "alleges damages in an amount greater than the damages allowed under . . . ORS 30.272." ORS 30.265(4). Pursuant to ORS 30.272, the liability of a local public body and its "officers, employees and agents acting within the scope of their employment or duties" for personal injury and death claims "to any single claimant" for "a single accident or occurrence" is "$566.700 for causes of action arising on or after July 1, 2011, and before July 1, 2012." ORS 30.272(2)(c). The limitation on damages "to all claimants" for such claims is "$1,133,300 for causes of action arising on or after July 1, 2011, and before July 1, 2012." ORS 30.272(3)(c).

This cause of action arose on January 27, 2012, and plaintiffs seek damages of no less than $3.5 million. Complaint, ¶ 68. Thus, the Oregon Tort Claims Act allows plaintiffs to proceed with their battery and wrongful death claims against both the City of Fairview and its employee, Morton. *See Johnson v. Gibson*, 918 F Supp2d 1075 (D Or 2013) (refusing to substitute city as sole defendant on claim alleging negligence by city employees in public park). Accordingly, Morton should be denied summary judgment on the Sixth and Seventh Claims.

## **RECOMMENDATION**

For the reasons set forth above, defendants' Motion for Partial Summary Judgment (docket #34) should be GRANTED IN PART as to the First Claim against Morton in its entirety, the Second Claim against Morton premised on a violation of the Fourteenth Amendment, and the Fifth Claim against the City of Fairview, and otherwise should be DENIED.

///

///

## <u>SCHEDULING ORDER</u>

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Monday, September 15, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED  August 28, 2014.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge